1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY CRAIG HUCKABEE,

11              Petitioner,                      No. CIV S-01-1795 DFL CMK P

12       vs.

13   DERRAL G. ADAMS, Warden,

14              Respondent.                      Findings and Recommendations

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  In his second amended petition, filed April 15,

18   2004, petitioner challenges his conviction on several grounds.

19                                    **I.  Background**

20              A jury found petitioner guilty of lewd and lascivious conduct with a

21   child under fourteen years of age and oral copulation with a child under fourteen years of age

22   and more than ten years younger than the perpetrator.  (Resp.'s Answer filed June 30, 2004, Ex.

23   A; RT 683-84.)   Petitioner was sentenced to prison for a term of fifty-five years to life.  (Resp.'s

24   Answer, Ex. A; Petitioner's Response filed Dec. 15, 2004, Ex. A.)

25              Petitioner molested his four-year-old daughter, Ashley, by having her orally

26   copulate him.  (Resp.'s Am. Answer filed Sept. 3, 2004 at 4.)  Petitioner's wife, Carmen

     Huckabee (Carmen) testified against him at trial, stating that Ashley told her that boys and girls

have "private areas" and that "Daddy has one and you suck on it." (Id.) Carmen testified that

Ashley stated that once, when she was playing in the front room, she had wanted milk and that

"daddy got her a drink of milk and she sucked on it." (Id.)  Ashley stated that when she "sucked

on it," milk came out, and that petitioner pulled her hair–a point of significance to Carmen as

petitioner pulled on Carmen's hair when she performed oral sex on him. (Id.)  After telling

Carmen this, Ashley came over to Carmen and told her that she had lied, Daddy did not do

anything, and Ashley did not want to get him in trouble.  (Id.)

Carmen testified to other actions by Ashley which supported Ashley's original

statements.  (Id.)  Carmen stated that Ashley once knelt by petitioner, put her head near his

crotch and opened her mouth.  (Id.)  Several months earlier, Ashley had told Carmen, after

picking up a toy from the floor, that "Daddy's got a thing and you suck on it."  (Id.) When

Carmen asked petitioner why Ashley would say that, he stated that she might have seen the

cover of a tape, which was on the bedroom floor, that depicted oral sex.  (Id.)

Ashley testified at trial that petitioner showed her his private part when they were

in the front room, but she denied that she touched it or did anything to it.  (Id.)  She also denied

telling her mother that she had done something with it.  (Id.)  She denied remembering that she

had told her mother that she "had sucked on that pee-pee thing."  (Id.)  Although repeatedly

asked whether she ever touched or sucked on petitioner's private part, Ashley either denied such

activity or, in most instances, claimed that she could not remember.  (Id.)  Carmen testified that

she had told Ashley that her Daddy was in jail as a result of what Ashley had said.  (Id.)  Carmen

also testified that Ashley stated that petitioner told her during a phone call from jail that, if

Ashley told the police officers that he did not do it, petitioner could come home.  (Id.)

Two of the investigating officers testified at petitioner's trial.  (Id. at 5.)  El

Dorado County Sheriff's Deputy Brett Smith stated that Ashley told him that she had been with

her Daddy both on the floor and on a chair.  (Id.)  She stated that she had "asked Daddy if she

could suck it, I like to suck it..." and that Daddy had said it was "O.K., as long as no milk came

2

1  out." (Id.)  Smith had been told by another deputy that petitioner grabbed Carmen by the hair

2  when he ejaculated, and he asked Ashley if petitioner had pulled his hair.  (Id.)  Ashley

3  responded that petitioner had "only grabbed it for a second."  Deputy Dale Spear testified that

4  Ashley was interviewed by a specialist in interviewing child abuse victims.  (Id.)  The interview

5  was videotaped, and it was played for the jury.  (Id.)  On the tape, Ashley described petitioner's

6  penis, including the "hole" where the "yucky milk" came out.  Ashley also stated on the tape

7  that, on the phone, petitioner told her that if she said nothing happened, he could come home.

8  (Id.)  Deputy Spear stated that, while Ashley was testifying in court the previous week, he had

9  seen petitioner shake his head "no" when Ashley began describing the incident in the living

10  room and that Ashley then ceased her description.  (Id.)

11        Leah D., who was seventeen years old, testified that she and her mother had lived

12  with petitioner for several years.  (Id.)  Leah stated that petitioner began to molest her when she

13  was five years old and continued to do so until she was ten.  (Id.)  Leah testified that she would

14  orally copulate petitioner while he "held her head or her back."  (Id.) The first molestation

15  occurred when petitioner put chocolate syrup on his penis and asked Leah to lick it off.  (Id.)

16  Leah also testified that petitioner rubbed his penis between her legs, make her fondle him and

17  once, in the presence of several other children, had Leah's cousin Jennifer play with his penis.

18  (Id.)

19        Andrew Hobart, a retired police officer, testified that he interviewed Leah in

20  1991. (Id.)  He stated that she told him about the oral copulation but did not mention petitioner

21  putting chocolate syrup on his penis, placing his penis between Leah's legs or the incident in

22  which Leah's cousin played with petitioner's penis.  (Id.)

23        Petitioner did not testify in his own defense.  (Id.)  His defense, as presented

24  through his wife, Carmen and the investigator who had interviewed Leah in 1991, was to cast

25  doubt on Ashley's and Leah's testimony by demonstrating the inconsistencies and the possibility

26  that both girls had obtained their knowledge from pornographic videos.  (Id.)  Carmen testified

that she "want[ed] [the case] over with." (Reporter's Transcript (RT) 39.)  She stated that she had "concerns about all of us if he is convicted."  (RT 39.)  Carmen testified that, prior to February 1997, she had been afraid of petitioner.  (RT 165.)  She stated that in July 1997 she was "afraid of confrontation with him."  (RT 165.)  She testified in court that she wanted her husband to be "released so that he could take care of his own responsibilities."  (RT 166.)

## II.  Analysis

### A.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result. See Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. See Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

1    application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

2    123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

3    review of the legal question, is left with a 'firm conviction' that the state court was

4    'erroneous.'")

5         The court looks to the last reasoned state court decision as the basis for the state

6    court judgment. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

7    reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

8    habeas court independently reviews the record to determine whether habeas corpus relief is

9    available under section 2254(d). See  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

10   **B.  Petitioner's Claims**

11        Petitioner claims that: (1) the trial court erred in admitting hearsay testimony; (2)

12   the trial court erred in admitting evidence of petitioner's prior bad acts to show propensity; (3)

13   the trial court sentenced him unconstitutionally; (4) that he received ineffective assistance of

14   both trial and appellate counsel; (5) he was sentenced in violation of the double jeopardy clause;

15   and (6) that he was unconstitutionally prejudiced by the prosecutor's misconduct.

16        **1.    Hearsay Testimony**

17        Petitioner first contends that the trial court erred in admitting a videotaped

18   interview with four-year-old Ashley.  Petitioner argues that the videotaped interview constituted

19   unreliable hearsay and violated his right to confront and cross examine witnesses against him.

20   Petitioner presented this claim to the state appellate court on direct appeal and to the California

21   Supreme Court in a petition for a writ of habeas corpus.  (Resp.'s Am. Answer, Exs. B & J.)

22   Both courts denied this claim, and the California Supreme Court denied the claim without a

23   reasoned decision.  (Id. Exs. A & K.)

24        Petitioner argues that the holding of Crawford v. Washington, 541 U.S. 36 (2004)

25   is applicable in this case.  (Pet.'s Denial to Resp.'s Answer at 3.)  Crawford states that out-of-

26   court statements by witnesses not appearing at trial that are testimonial are barred under the

5

1  Confrontation Clause unless the witnesses are unavailable and the defendants had a chance to

2  cross examine, regardless of whether such statements are deemed reliable by the trial court.

3  Crawford, 541 U.S. at 51.  Although the holding of Crawford was not clearly established law at

4  the time that the criminal proceedings in petitioner's case took place,[1] the Ninth Circuit held in

5  Bockting v. Bayer, 399 F.3d 1010, as amended on denial of rehearing by 408 F.3d 1127 (9th Cir.

6  2005) that the Crawford decision should be applied retroactively on collateral review.

7  Accordingly, the undersigned recognizes that, under Bockting, extending the holding of

8  Crawford to petitioner does not violate the nonretroactivity principle set forth in Teague v. Lane,

9  489 U.S. 288 (1989),[2] and applies Crawford  in the instant case.

10          The facts of Crawford reveal that Michael Crawford stabbed a man who allegedly

11  raped his wife, Sylvia.  See Crawford, 541 U.S. at 38, 40.  Sylvia apparently witnessed the

12  stabbing, but did not testify at trial due to Washington's marital privilege law, which bars a

13  spouse from testifying without the other spouse's consent.  See id. at 40.  Because Sylvia did not

14  testify at the trial, the state sought to introduce Sylvia's out of court statement to the police as

15  evidence that Crawford did not act in self defense.  See id. at 40.

16  ///

17

18          [1]Petitioner's trial took place from October 1997 through January 1998.  (RT i-ii.)  His
    conviction became final on direct review in April 2000.  (Resp.'s Am. Answer, Ex. J at 105;
19  Doc. 18, Ex. C.) (The court notes that in Respondent's Am. Answer at 10:10-11, respondent
    asserts that petitioner's conviction became final in July 2005..)

20
            [2]The holding in Teague v. Lane, 489 U.S. 288 (1989) states that new constitutional rules
21  of criminal procedure will not be applicable to those cases which have become final before the
    new rules are announced unless they fall within two exceptions to the general rule.  The two
22  exceptions are if the new constitutional rule of criminal procedure would "place certain kinds of
    primary, private individual conduct beyond the power of criminal-law making authority..." or
23  "require the observance of 'those procedures that...are 'implicit in the concept of ordered
    liberty.'" Teague 489 U.S. at 307; see also, Sawyer v. Smith, 497 U.S. 227, 242 (1990)(stating
24  that rules are properly considered retroactive when they "alter our understanding of the bedrock
    procedural elements essential to the fairness of a proceeding.  In Bockting v. Bayer, 399 F.3d
25  1010 (9th Cir. 2005), the Ninth Circuit stated that Crawford was retroactive because it altered the
    understanding of the bedrock procedural elements essential to the fairness of a proceeding. See
26  id.at 1019-20.

1       The Supreme Court held that the use of Sylvia's statement violated the

2 Confrontation Clause because, where testimonial statements are at issue, the only indicium of

3 reliability sufficient to satisfy constitutional demands is confrontation.  See id. at 68.  Justice

4 Scalia engaged in a lengthy historical analysis of the Confrontation Clause, "noting that 'the

5 principle evil at which the Confrontation Clause was directed was the civil law mode of criminal

6 procedure, and particularly its use of ex parte communications as evidence against the accused.'"

7 Bockting, 399 F.3d at 1014 (citing to Crawford, 541 U.S. at 50)(emphasis in original).   Justice

8  Scalia emphasized that "'the Framers would not have allowed admission of testimonial

9 statements of a witness who did not appear at trial unless he was unavailable to testify and the

10 defendant had a prior opportunity for cross-examination.'"  Id. (citing Crawford, 541 U.S. at 53-

11 54).

12       The factual background in Bockting also reveals that the witness did not testify at

13 trial.  The relevant facts reveal that Martin Bocketing's daughter, Autumn, told her mother,

14 Laura, that she had been sexually assaulted by Bocketing.  See Bockting, 399 F.3d at 1013.  At

15 the preliminary hearing, Autumn, when questioned about being touched by Bockting, became

16 upset and, upon further questioning, stated that she could not remember what happened between

17 her and her father.  See id.  The trial judge declared Autumn an unavailable witness and Autumn

18 did not testify at trial.  See id.  The trial judge found that Autumn's hearsay statements to Laura

19 were admissible because Autumn was effectively unavailable to testify.  See id.  Accordingly,

20 applying the holding of Crawford, the Ninth Circuit concluded that admission of Autumn's

21 hearsay statement's violated the Confrontation Clause because the defendant had no opportunity

22 to cross-examine Autumn concerning her statements nor was she unavailable to testify.  See

23 id. at 1021-22.

24       The facts of the instant case distinguish it from both Crawford and Bockting.

25 Here, Ashley testified at trial.  The record reveals that Ashley testified at trial that she did not

26 perform oral sex on petitioner. (RT 232-24.)  Ashley admitted only that petitioner had showed

1  her his penis and either stated that she could not remember or denied telling her mother that she

2  had done anything to petitioner's penis.  (RT 232-24.)   The prosecutor questioned Ashley about

3  the statements she made during a videotaped interview with a trained child molester victim

4  interviewer, which were that she had orally copulated petitioner and that he had ejaculated into

5  her mouth. (RT 242.)  The prosecutor asked Ashley if she "remember[ed] telling that lady that

6  one time when you are in the room with the big mirror, do you remember telling her [that you

7  orally copulated your father]."  (RT 242.)  Ashley stated that she did not remember telling the

8  victim interviewer that she had orally copulated petitioner, but that she did remember telling the

9  police officer that.  (RT 242.)

10         The questions asked on direct examination concerning the statements that Ashley

11  made during the videotaped interview opened the door for defense counsel to cross examine

12  Ashley about these statements.  See Fed. R. Evid. 611(b) (stating that "cross examination should

13  be limited to the subject matter of direct examination and matters affecting the credibility of the

14  witness"); United Sates v. Arias-Villaneuva, 998 F.2d 1491, 1508 (9th Cir. 1993) (stating that a

15  district court may permit cross examination as to all matters reasonably related to the issues put

16  in dispute by a witness's on direct examination).  After Ashley repeatedly denied remembering

17  anything on direct examination, the trial court stated to the prosecution: "I think we've gone

18  about as far as we can...."  (RT 259.)  The court then asked if defense counsel had any questions,

19  and defense counsel said no, declining to question Ashley on cross examination.  (RT 259.)

20         After Ashley testified, the prosecutor sought to have admitted into evidence

21  Ashley's statements, which she made during a videotaped interview with a trained child molester

22  victim interviewer, that she had orally copulated petitioner and that he had ejaculated into her

23  mouth.  (RT 260.) Over petitioner's objection, the trial court admitted Ashley's videotaped

24  testimony under the prior inconsistent statement exception to the hearsay rule under California

25  Evidence Code § 1235. (RT 267-68.)

26  ///

1    Although Ashley's videotaped statement constitutes a testimonial statement[3], the

2    undersigned finds that its admittance does not violate petitioner's right under the confrontation

3    clause.  Petitioner was afforded the only "indicium of reliability sufficient to satisfy

4    constitutional demands"—confrontation.   The record reveals that Ashley testified at trial and

5    was available for cross examination on her videotaped statement.  Although petitioner was

6    offered the opportunity to cross examine Ashley, he declined to do so.   Accordingly, the

7    undersigned concludes that, under the holding announced in Crawford, petitioner's right to

8    confront and cross examine witnesses against him was not violated by the trial court admitting

9    Ashley's videotaped interview. The undersigned finds that the state court's rejection of

10   petitioner's claim that the trial court erred in admitting the videotape evidence was neither

11   contrary to nor an unreasonable application of controlling principles of federal law.  The

12   undersigned recommends that petitioner's first claim for relief be denied.

13                    **2.      Evidence of Petitioner's Prior Bad Acts**

14           Petitioner next claims that the trial court erred in allowing the prosecution to

15   submit evidence of petitioner's prior probationary term for sexually molesting a minor.

16   Petitioner claims that admitting this evidence allowed the prosecution to show that petitioner has

17   a propensity for committing sex crimes in violation of his right to due process.   Petitioner

18   presented this claim to the California Supreme Court, which denied the claim without a reasoned

19   decision.  (Resp.'s Am. Answer, Exs. J & K.)

20   ///

21   ///

22   ///

23   ///

24   ///

25   _____

26          [3]In Crawford, Justice Scalia stated that, at a minimum, the term testimonial covered
     police interrogations.  Crawford, 541 U.S. at 68.

1    At the onset, respondent argues that petitioner's due process claim is barred by

2 the Teague nonretroactivity rule.  See Teague v. Lane, 489 U.S.at 288.  However, in making his

3 due process argument, petitioner relies heavily on McKinney v. Rees, 993 F.2d 1378 (9th Cir.

4 1993),  which was decided nearly four years before petitioner was tried in 1997.  (Pet.'s Denial

5 to Respondent's Answer at 3:22-24.)  Accordingly, the undersigned concludes that petitioner's

6 due process argument is not Teague barred.

7    The admission of relevant evidence will not offend due process unless the

8 evidence is so prejudicial as to render the trial fundamentally unfair. See Estelle, 502 U.S. at 70.

9 Only if no permissible inferences can be drawn from admitted evidence will due process be

10 violated. See Jammal v. Van de Van De Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  "The

11 Supreme Court has never expressly held that it violates due process to admit other crimes

12 evidence for the purpose of showing conformity therewith or that it violates due process to admit

13 other crimes evidence for other purposes without a limiting instruction to the jury." Garceau v.

14 Woodford, 275 F.3d 769, 774-45 (9th Cir. 2001, rev'd on other grounds)(citing Estelle, 502 U.S.

15 at 75, n.5).  The Ninth Circuit has held that the admission of other crimes evidence violates due

16 process when (1) the balance of the prosecution's evidence against defendant was "solely

17 circumstantial; (2) the other crimes evidence was similar to the crime for which defendant was

18 on trial; (3) the prosecutor relied on the other crimes evidence at several points during the trial;

19 and (4) the other crimes evidence was emotionally charged." McKinney, 993 F.2d at 1381-82-

20 1385-86.

21    Here, the prosecution's case hinged on the testimony of Carmen, Ashley and

22 Ashley's out-of-court-videotaped statements. The balance of the prosecution's case against

23 defendant was not solely circumstantial.  Instead, it was based on direct evidence of Ashely's

24 statements concerning the incident between herself and defendant.  The prosecution did not

25 excessively rely on evidence of petitioner's prior bad acts. Instead, the prosecution's main focus

26 was on Ashley's testimony and the testimony of those who interviewed her.  The evidence of

1 petitioner's prior bad acts were slightly different and no more inflammatory than the testimony

2 given by Ashley.  Further, petitioner's prior bad acts were introduced for a relevant purpose–to

3 show a common plan or scheme.

4         Accordingly, the undersigned finds that the state court's rejection of petitioner's

5 claim that his due process rights were violated by the trial court admitting evidence of his prior

6 bad acts was neither contrary to nor an unreasonable application of controlling principles of

7 federal law.  The undersigned recommends that petitioner's second claim for relief be denied.

8      **3.**     **Unconstitutional Application of California's Sentencing Scheme**

9         Petitioner contends that California's sentencing scheme, as it was applied in his

10 case, infringed on his right to a fair trial.  He contends that the trial court imposed sentencing

11 enhancements, which constituted separate charges that needed to be proved to a jury beyond a

12 reasonable doubt.  Petitioner presented this claim to the California Supreme Court, and it was

13 denied without a reasoned decision.  (Resp. Am. Answer, Ex's. J & K.)

14         In Apprendi v. New Jersey, 530 U.S. 466, 471 (2000), the Supreme Court stated

15 that "other than a fact of a prior conviction, any fact that increases the penalty for a crime

16 beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

17 reasonable doubt."  Here, the jury found petitioner guilty of two charged counts—committing a

18 lewd act on a child and oral copulation of a person under fourteen.  (RT 683.)  The jury also

19 found petitioner's prior California Penal Code Section 288(a) conviction to be true.  (RT 683-

20 84.)  The jury found this conviction to be true beyond a reasonable doubt.  (Clerk's Transcript

21 (CT) 135-36.)

22         Under Apprendi, petitioner was not entitled to have the fact of his prior

23 conviction submitted to the jury.  See id. at 471.  However, the jury did find that petitioner's

24 prior conviction was true beyond a reasonable doubt.  To the extent that petitioner argues that the

25 jury should have been advised of the effect petitioner's prior conviction would have on his

26 sentence, this argument must also fail.  Petitioner has no right to have the jury consider

1  sentencing information in a non-capital cases.  See Shannon v. United States, 512 U.S. 573, 579

2  (1994).   The undersigned finds that the state court's rejection of petitioner's claim that the

3  California sentencing scheme, as applied in his case, was unconstitutional was neither contrary

4  to nor an unreasonable application of controlling principles of federal law.  The undersigned

5  recommends that petitioner's third claim for relief be denied.

6        **4.**    **Ineffective Assistance of Counsel**

7          Petitioner next claims that he received ineffective assistance of trial and appellate

8  counsel under several different theories.  Petitioner claims that his trial counsel failed to

9  adequately consult with him about his case, was late to or failed to attend court hearings, failed

10  to allow petitioner to review the videotaped interview of Ashley, refused to allow petitioner to

11  testify, agreed with the prosecutor to ensure a conviction against petitioner in exchange for

12  leniency for another of trial counsel's clients, failed to convey a plea offer to the petitioner from

13  the prosecution, failed to present expert testimony, failed to file a Miranda[4] motion to exclude

14  certain statements that petitioner made to law enforcement, failed to present mitigating evidence

15  at sentencing and failed to file a timely notice of appeal.  Petitioner argues that his appellate

16  counsel should have brought the Miranda claim on appeal.  Petitioner presented these claims to

17  the California Supreme Court in a petition for writ of habeas corpus, which that court denied

18  without a reasoned decision.  (Resp. Am. Answer, Exs. J & K.)

19          In order to prevail on his claim of ineffective assistance of counsel, petitioner

20  must show two things, an unreasonable error and prejudice flowing from that error. See

21  Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

22  all the circumstances, counsel's performance fell below an objective standard of reasonableness.

23  See Strickland, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that

24  are alleged not to have been the result of reasonable professional judgment. See id. at 690.  The

25  _____

26       [4]Miranda v. Arizona, 384 U.S. 436 (1966)

1  federal court must then determine whether in light of all the circumstances, the identified acts or

2  omissions were outside the wide range of professional competent assistance. See id.  "We

3  strongly presume that counsel's conduct was within the wide range of reasonable assistance, and

4  that he exercised acceptable professional judgment in all significant decisions made." Hughes v.

5  Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

6  Second,  petitioner must affirmatively prove prejudice. See  Strickland, 466 U.S.

7  at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

8  unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

9  reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.;

10  see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

11  2000).  A reviewing court "need not determine whether counsel's performance was deficient

12  before examining the prejudice suffered by the defendant as a result of the alleged

13  deficiencies . . .. If it is easier to dispose of an ineffectiveness claim on the ground of lack of

14  sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

15  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).   In order to demonstrate prejudice in this

16  context, petitioner must demonstrate that, but for counsel's errors, he probably would have

17  prevailed on appeal.  See  Miller, 882 F.2d at 1434 n.9.  The Strickland standard also applies to

18  claims of ineffective assistance of trial counsel.  See Smith v. Robbins, 528 U.S. 259, 285

19  (2000).

20  After a careful review of the record, the undersigned determines that petitioner

21  cannot show that he suffered prejudice as a result of the alleged deficiencies of his trial counsel.

22  Petitioner's trial counsel, David Weiner, has submitted an affidavit stating that petitioner's

23  allegations are false.  (Decl. of David Weiner, Doc. 24.)   Further, petitioner has not shown that

24  he was prejudiced by any of the alleged deficiencies.

25  ///

26  ///

### a.      Adequate Consultation

Petitioner alleges that several days elapsed between the time that petitioner's family retained trial counsel and the time that trial counsel contacted petitioner.  Petitioner also claims that he made almost daily calls asking trial counsel to come to the county jail for consultation, which trial counsel ignored.  There is no constitutionally required minimum of meetings between trial counsel and a client.  See e.g. United States v. Olsen, 846 F.2d 1103, 1108 (7th Cir. 1988) (stating that there is no required minimum of meetings between counsel and the accused).  Even if trial counsel's performance is deficient in this regard, a petitioner still must affirmatively prove prejudice.  See United States v. Rogers, 769 F.2d 1418, 1425 (9th Cir. 1985).  Petitioner makes allegations that his trial counsel did not consult with him; however, these allegations do not show how trial counsel's performance was deficient, nor do they show how petitioner was prejudiced by the alleged deficiencies.  See  Strickland, 466 U.S. at 693.

### b      Trial Counsel's Lateness or Failure to Appear

Petitioner alleges that trial counsel was late or failed to appear at hearings.  Petitioner claims that the substitute counsel who appeared at hearings were "ill prepared" and that petitioner met "with negative results" when trial counsel did appear. (Second Am. Pet. at 38.)  Petitioner claims that these alleged failures deprived him of zealous representation.  Again, petitioner has made allegations of his counsel's alleged deficiencies, but he has not shown that he was prejudiced by them.  Petitioner makes no showing that the end result of his trial would have been different, but for his counsel's alleged failure to appear at hearings or to appear at hearings in a timely manner.  See Strickland, 466 U.S. at 693.

### c.      Review of Ashley's Videotaped Interview

Petitioner alleges that his right to due process and his right to cross-examine witnesses were violated by trial counsel's alleged failure to allow him to view Ashley's videotaped interview.  Petitioner's trial counsel has denied that petitioner requested to view the videotaped interview.  (Decl. of David Weiner, Doc. 24.)  The record shows that when the

14

prosecutor sought to have the videotaped admitted, petitioner's trial counsel objected.  Despite

the objections of the defense, the trial judge ruled that the videotapes were admissible.  (RT 261-

69.)  Petitioner has failed to demonstrate that he was prejudiced by trial counsel's alleged failure

 to allow him to view the videotape.  Further, the record reveals that petitioner cannot show that

the end result of his trial would have been different had he been afforded an opportunity to view

the videotape prior to trial. See Strickland, 466 U.S. at 693.

### d.      Petitioner's Ability to Testify

Petitioner claims that his trial counsel refused to let him testify despite his express

desire to do so.  Petitioner states that he believes that his testimony was necessary to "clarify

several points." (Second Am. Petition at 43.)   Petitioner's trial counsel has denied that he

refused to allow petitioner to take the stand.  (Decl. of David Weiner, Doc. 24.) While petitioner

claims that he wanted to clarify several points by testifying, petitioner does not point to any

specific area of confusion that he would have clarified.  The record shows that petitioner

attempted to show inconsistencies in Ashley's statements through the testimony of petitioner's

spouse and the testimony of Officer Hobart.  Petitioner has not shown that his testimony would

have added anything to the testimony of these two witnesses.  Petitioner has not demonstrated

that he was prejudiced by allegedly being prevented from testifying as he cannot demonstrate

that the end result of his trial would have been different but for his failure to testify.  See

Strickland, 466 U.S. at 693.

### e.      Trial Counsel's Agreement to Ensure Conviction

Petitioner alleges that his trial counsel entered into an agreement with the

prosecution to ensure that petitioner was convicted in order to obtain a favorable plea agreement

for trial counsel's brother, who was also one of trial counsel's clients.  Petitioner claims that this

circumstance resulted in trial counsel having a conflict of interest.  Petitioner's trial counsel

denies that he entered into such an agreement.  (Decl. of David Weiner, Doc. 24.)  Petitioner

claims that he learned this information from a cellmate who claimed to be trial counsel's brother.

15

1   Petitioner has not provided any evidence to support this claim.  Further, the record indicates that

2   trial counsel vigorously defended petitioner.  Trial counsel objected to the admittance of

3   prejudicial evidence and, through examination of witnesses, attempted to discredit the

4   prosecution's case. Based on the record, the undersigned finds that petitioner has failed to show

5   that trial counsel entered into any agreement with the prosecution to ensure petitioner's

6   conviction.  Since there is no evidence of any untoward agreements between trial counsel and the

7   prosecution, the undersigned finds that petitioner was not prejudiced by such an agreement.

8              **f.      Plea Offer**

9              Petitioner claims that the prosecution offered his trial counsel a plea

10  bargain, which trial counsel failed to communicate to petitioner.  Petitioner's trial counsel has

11  denied this allegation.  (Decl. of David Weiner, Doc. 24.)  Petitioner has offered no evidence that

12  the prosecution did make a plea offer.  Based on all the evidence in the record, the undersigned

13  finds that petitioner has failed to show that the prosecution offered a plea bargain to petitioner's

14  trial counsel.  Since there is no evidence that a plea bargain was offered, the undersigned finds

15  that petitioner was not prejudiced by a failure of trial counsel to communicate a plea offer to

16  petitioner.

17             **g.      Failure to Present Expert Testimony**

18             Petitioner contends that his trial counsel should have retained an expert witness to

19  rebut the prosecution's expert witness on Sexual Abuse Accommodation Syndrome.  Petitioner

20  does not offer evidence that such an expert would have testified on his behalf at trial; instead he

21  speculates that such an expert could have been found.  Such speculation is insufficient to

22  establish prejudice.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001); see also,

23  Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what an expert would

24  say is not sufficient to establish a prejudice).

25  ///

26  ///

16

### h.    Failure to Make <u>Miranda</u> objections

Petitioner argues that his trial counsel should have moved to exclude statements that he made to law enforcement as unconstitutional under <u>Miranda</u> and that his appellate counsel should have raised this issue on appeal.  Petitioner makes several allegations concerning law enforcement's disregard for his <u>Miranda</u> rights during questioning.  However, petitioner fails to indicate that he made any statements in response to questioning by law enforcement or that any statements were introduced at trial. In fact, petitioner states that, upon questioning by officers, he "invoked his right to remain silent" and refused to answer questions. (Second Am. Pet. at 56.)  After about twenty minutes of questioning, with no statements made by petitioner, the officers ceased their interrogation.  (<u>Id.</u>)  At a later questioning session, petitioner states that he again refused to answer questions and was finally returned to his cell.  (<u>Id.</u> at 57.)   Based on the evidence, it appears that any <u>Miranda</u> objections made by trial counsel would have been fruitless.  The undersigned finds that petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to make <u>Miranda</u> objections.

As petitioner made no statements which could have been excluded under <u>Miranda</u>, an appeal on such grounds would have been fruitless.  <u>See</u> <u>U.S. v. Aguon</u>, 851 F.2d 1158, 1172 (9th Cir. 1998).  In determining whether to file an appeal on certain issues, appellate counsel need only identify non-frivolous issues.  <u>Smith</u>, 528 U.S. at 285.  Based on the evidence in the record, petitioner has failed to demonstrate that he was prejudiced by appellate counsel's failure to include a <u>Miranda</u> argument on appeal.

### i.    Failure to Present Mitigating Evidence at Sentencing

Petitioner alleges that his trial counsel failed to present any mitigating evidence at his sentencing.  Petitioner points out that he had "no criminal history, other than a probationary term, was gainfully employed, and was a tax paying member of his local community."  (Second Am. Complaint at 58.)  The record reflects that the court was aware of this information through the probation report and that petitioner's sentence was mandated by statute instead of being left

1     to the discretion of the trial judge.  Accordingly, petitioner has failed to demonstrate that trial

2     counsel's alleged failure to introduce mitigating evidence prejudiced him.  See Strickland, 466

3     U.S. at 686.

4                **j.**      **Timely Notice of Appeal**

5           Petitioner contends that his trial counsel promised he would file a notice of

6     appeal, then waited until two days prior to the date the appeal notice was due to tell petitioner to

7     do it himself.  The record does not support this contention.  Petitioner was sentenced on January

8     12, 1998. (CT 219-34.)  Petitioner had sixty days from that date to file an appeal.  See California

9     Rules of Court, Rule 2.  The sixty days for petitioner to file an appeal expired on March 13,

10    1998.  The notice of appeal was filed on February 27, 1998, more than fourteen days prior to the

11    deadline.  Further, petitioner has not shown that he was prejudiced in any way by trial counsel's

12    alleged failure to file an appeal after promising to do so.  See  Miller, 882 F.2d at 1434 n.9.

13          For the foregoing reasons, the undersigned finds that none of the theories

14    advanced by petitioner establish that he was prejudiced by ineffective assistance of counsel.  The

15    undersigned finds that the state court denial of petitioner's ineffective assistance of counsel

16    claim was neither contrary to nor an unreasonable application of controlling principles of federal

17    law.  The undersigned recommends that petitioner's fourth claim for relief be denied.

18          **5.**      **Sentencing in Violation of the Double Jeopardy Clause**

19           Petitioner argues that California's three strikes law and his sentence, which stems

20    from that law, violate the double jeopardy clause.  Petitioner claims that applying a prior

21    conviction to a current conviction to increase the term of imprisonment constitutes a double

22    punishment.  Petitioner presented this claim to the California Supreme court, which denied the

23    claim without a reasoned decision.  (Resp. Am. Answer, Exs. J & K.)

24          In enacting the three strikes law, the California Legislature made a judgment that

25    protecting public safety requires incapacitating criminals who have already been convicted of at

26    least one serious or violent crime.  See Ewing v. California, 538 U.S. 11, 25-26 (2003).

1    "Nothing in the Eighth Amendment prohibits California from making that choice."  Id.  Instead,

2    established precedent demonstrates that states have an interest in deterring and segregating

3    repeat offenders.  See id. (internal citations omitted).  Although the petitioner claims that

4    Apprendi v. New Jersey, 530 U.S. 466 (2000) indicates that his sentence does violate the Double

5    Jeopardy Clause of the constitution, Apprendi was decided prior to Ewing.  The holding

6    concerning the Double Jeopardy Clause issue in Ewing controls over petitioner's interpretation

7    of the dicta in Apprendi.  Accordingly, the undersigned finds that the state court denial of

8    petitioner's double jeopardy claim was neither contrary to nor an unreasonable application of

9    controlling principles of federal law.  The undersigned recommends that petitioner's fifth claim

10   for relief be denied.

11                           **6.     Prosecutorial Misconduct**

12                   Petitioner alleges that he was subjected to multiple instances of prosecutorial

13   misconduct.  Petitioner claims that: the prosecutor failed to give notice that the state was seeking

14   a "one-strike adjudication," the prosecutor knowingly presented various false testimony and

15   evidence, the victim's statements were coerced, his spouse was threatened so that she would

16   testify against him, the victim's mother (petitioner's spouse) was not permitted to be present

17   during victim interviews, when police interviewed his spouse the interview was videotaped

18   without her knowledge, the prosecution provided the trial court with false information at

19   sentencing, the prosecution offered leniency to a defendant in an unrelated criminal case in order

20   to secure petitioner's conviction, the prosecutor failed to disclose exculpatory information and

21   that the prosecution subjected the victim to an unduly long examination.  Petitioner also

22   contends that he was not allowed to attend in camera hearings, that he is factually innocent and

23   that the cumulative effect of all the aforementioned errors resulted in reversible prejudice.

24   Petitioner presented these claims to the California Supreme Court, which denied them without a

25   reasoned decision.  (Resp. Am. Answer, Ex. J & K.)

26                   Success on a claim of prosecutorial misconduct requires a showing that the

1   conduct so infected the trial with unfairness as to make the resulting conviction a denial of due

2   process. See Greer v. Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to

3   determine "whether, considered in the context of the entire trial, that conduct appears likely to

4   have affected the jury's discharge of its duty to judge the evidence fairly." United States v.

5   Simtob, 901 F.2d 799, 806 (9th Cir. 1990).   Generally, if an error of constitutional magnitude is

6   determined, a harmless error analysis ensues.  Error is considered harmless if the court, after

7   reviewing the entire trial record, decides that the alleged error did not have a "substantial and

8   injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.

9   619, 638 (1993).  Error is deemed harmless unless it "is of such a character that its natural effect

10  is to prejudice a litigant's substantial rights." Kotteakos v. United States, 328 U.S. 750, 760-761

11  (1946).

12          Depending on the case, a prompt and effective admonishment of counsel or

13  curative instruction from the trial judge may effectively "neutralize the damage" from the

14  prosecutor's error. See U.S. v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing Simtob,

15  901 F.2d at  806).

16          **a.      Notice of "One-Strike Adjudication"**

17          The record reveals that petitioner was aware that the state sought a conviction that

18  would trigger a one-strike sentence.  The information in this case stated "the following

19  circumstances apply:...the defendant has suffered a prior conviction for P.C. 288(a).  It is further

20  alleged that ...defendant was previously convicted of the crime of Lewd Conduct with a Child

21  Under 14..." (CT at 15.)  Accordingly, the undersigned finds that petitioner's claim that he was

22  unaware that the state sought a one-strike adjudication is without merit.

23          **b.      Presentation of False Evidence and Testimony**

24          Petitioner states that the prosecutor used evidence which petitioner "sincerely

25  believes" that "[the prosecutor] as well as Trial Counsel, KNEW...was false and would mislead

26  the jury." (Second Am. Pet. at 65.)  Petitioner does not point to any specific false testimony and

1  offers no evidence, aside from his statements, that any testimony or evidence was false.

2        The knowing use of false or perjured testimony to obtain a conviction against a

3  defendant is unconstitutional.  See Napue v. Illinois, 360 U.S. 264 (1959).  An allegation only

4  that false or perjured testimony was introduced, however, is not a violation absent knowing use

5  by the prosecutor.  See Murtishaw v. Woodford, 255 F.3d 926, 959 (9th Cir. 2001).  As

6  petitioner can show neither that any testimony was false or perjured nor that the prosecutor knew

7  that any testimony was false or perjured, he cannot show that he was prejudiced. See id.

8              **c.     Coerced Testimony of the Victim**

9        Petitioner claims that the prosecutor coerced the testimony of the victim, Ashley,

10 during interviews.  He states that Ashley was interviewed without her mother and was offered

11 food and snacks during the interviews.  He further states that the misconduct in his case is "an

12 echo of prosecutorial misconduct occurring....across this Nation." (Second Am. Pet. at 68.)

13       The record indicates that interviews of Ashley were performed by deputies

14 specially trained to interview child sexual assault victims.  (RT 363-67, 395-411.)  More

15 importantly, however, petitioner offers no evidenced that he has been prejudiced by the allegedly

16 coerced statements of Ashley.  As discussed above, petitioner cannot show that the prosecutor

17 knowingly introduced perjured testimony.  He cannot show that the admittance of Ashley's

18 allegedly coerced testimony rendered his trial fundamentally unfair. See Greer, 483 U.S. at 765.

19 The record shows that, when Ashley testified, petitioner was afforded the opportunity to cross

20 examine her.  He was afforded the opportunity to examine the deputies who interviewed Ashley.

21 Finally, petitioner was afforded the chance to examine the victim's mother, his wife Carmen.

22 He has not shown that the alleged coerced testimony was likely to have affected the jury's ability

23 to judge the evidence fairly." Simtob, 901 F.2d at 806.

24 ///

25 ///

26 ///

1        **d.      Coerced Testimony of Petitioner's Spouse**

2        Petitioner argues that the testimony of his spouse was coerced by the prosecution

3   through threats.  As discussed above, petitioner has not shown that the prosecution introduced

4   perjured testimony or that the admittance of his wife's testimony rendered his trial

5   fundamentally unfair. See Greer, 483 U.S. at 765.

6        **e.      Spouse's Videotaped Testimony**

7        Petitioner contends that because an interview with his spouse was videotaped

8   without her knowledge, his trial was rendered fundamentally unfair. This claim does not state a

9   cognizable claim for habeas relief as petitioner has no liberty interest in whether his spouse's

10  testimony was videotaped without her knowledge.  Cf. Rakas v. Illinois, 439 U.S. 128, 139-40

11  (1978) (to have standing to bring a claim, proponent must assert his own legal rights and

12  interests rather than basing his claim for relief on the rights of third parties).  Further, petitioner

13  has made no showing that the alleged taping infected his trial with unfairness.  See Greer, 483

14  U.S. at 765.

15       **f.      False Prior Probation Information at Sentencing**

16       Petitioner claims that the prosecution presented the trial court with false prior

17  probation information at his sentencing.  Specifically, he claims that, although he successfully

18  completed his probation term, the probationary report stated that he was unsuccessful in

19  completion.

20       The record shows that both the prosecutor and petitioner's trial counsel

21  acknowledged that petitioner was on probation for two misdemeanor convictions of spousal

22  abuse.  (RT 694.)   Petitioner cannot show that the prosecution knowingly provided false

23  information concerning the probation.  Further, even if such  alleged conduct were true, the

24  prosecution's error was harmless as petitioner's sentence was statutorily mandated.  Kotteakos,

25  328 U.S. at 760-761.

26  ///

1     **g.**  **Prosecution's Agreement to Ensure Conviction**

2     Petitioner contends that the prosecution and his trial counsel entered into an

3 agreement by which petitioner's counsel would ensure petitioner's conviction in exchange for

4 leniency for counsel's brother, whom trial counsel also represented.  As discussed on page

5 fourteen <u>supra</u>, petitioner provides no evidence that such an agreement was ever made.  Instead,

6 the record indicates that trial counsel vigorously defended plaintiff.

7     **h.**  **Failure to Disclose Exculpatory Evidence**

8     Petitioner claims that the prosecutor failed to disclose exculpatory evidence in

9 violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Specifically, petitioner contends that the

10 prosecution failed to disclose to him evidence of the alleged agreement to ensure petitioner's

11 conviction between his counsel and the prosecutor.  In order to prove a <u>Brady</u> violation, a

12 petitioner must prove three things.  First, the evidence at issue must be favorable to the accused

13 because it is either exculpatory or impeachment material.  <u>See</u> <u>United States v. Bagley</u>, 473 U.S.

14 667, 676 (1985).  Next, the evidence must have been suppressed by the state either willfully or

15 inadvertently.  <u>See</u> <u>United States v. Agurs</u>, 427 U.S. 97, 110 (1976).  Finally, prejudice must

16 result from the failure to disclose evidence.  <u>See</u> <u>Bagley</u>, 473 U.S. at 678.  Evidence is material

17 under <u>Brady</u> only if there is a reasonable probability that the result would have been different

18 had it been disclosed to the defense.  <u>See</u> <u>United States v. Cooper</u>, 173 F.3d 1192, 1202 (9th Cir.

19 1999).

20     Even assuming for the moment that petitioner could show that the prosecution

21 and petitioner's counsel entered into an agreement to ensure his conviction, he still cannot

22 establish a <u>Brady</u> claim.  The evidence of an agreement between the prosecution and trial

23 counsel is neither exculpatory toward defendant nor impeachment material.  <u>See</u> <u>Bagley</u>, 473

24 U.S. at 676.

25 ///

26 ///

1        **i.**     **Victim Subject to an Unduly Long Examination**

2        Petitioner claims that the prosecutor engaged in misconduct by keeping the victim

3 on the stand for undue lengths of time, badgering her with repeated questions in order to garner

4 the desired response.  This claim does not state a cognizable claim for habeas relief as petitioner

5 has no liberty interest in the amount of time that the victim was on the stand or the kinds of

6 questions that she was asked.  Cf. Rakas, 439 U.S. at 139-40 (to have standing to bring a claim,

7 proponent must assert his own legal rights and interests rather than basing his claim for relief on

8 the rights of third parties).

9        However, even assuming for the moment that petitioner does state a cognizable

10 habeas claim, petitioner has not shown that the prosecutor's questioning of the victim, Ashley,

11 rendered his trial fundamentally unfair.  The record reflects that the prosecutor asked Ashley

12 several preliminary questions to make her feel comfortable on the stand.  (RT 175-94.)   Several

13 breaks were taken during questioning.  (RT 197-98.)  Only at the very end of the questioning, did

14 the prosecutor attempt to question Ashley about the molestation. Ashley either denied the

15 molestation or claimed that she had no recollection.  Her answers on the witness stand were no

16 more damaging than her initial videotaped statements or her statements to her mother.  Thus, any

17 improper questioning was harmless.  See Brecht v. Abrahamson, 507 U.S. 619, 629 (1993.)

18        **j.**     **The Victim's Pictures**

19        Petitioner alleges that the presentation of pictures that the victim drew of his penis

20 constituted prosecutorial misconduct.  Specifically, petitioner argues that the drawings were

21 done by an interviewer and not by the victim.  The record reflects that the pictures were a small

22 part of the evidence against petitioner, and that petitioner's counsel was afforded the opportunity

23 to examine a deputy who testified that the victim drew the pictures in the deputy's presence.

24  Petitioner has not demonstrated that the prosecutor knowingly introduced false testimony, and

25 he cannot show that presentation of the pictures rendered his trial fundamentally

26 unfair. See Greer, 483 U.S. at 765.

### k.    In Camera Hearings

Petitioner argues that the prosecutor engaged in misconduct by not allowing him to attend in camera hearings that occurred throughout the trial.  A defendant has a right to be present at any state of the criminal proceeding that is critical to the outcome if his presence would contribute to the fairness and reliability of the proceeding.  See Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  Presence is not guaranteed when the defendant's presence would be useless or that of a shadow.  See id.  Petitioner has not demonstrated that his presence at any of the in camera hearings would have been useful or more than a mere shadow.  As such, he has failed to show that the prosecutor's alleged misconduct prejudiced him. See Greer, 483 U.S. at 765.

### l.    Factual Innocence

Petitioner claims that he is factually innocent and that the affidavit of his spouse, which was attached to his first amended petition serves to provide motive for the victim's "misunderstood statements to law enforcement."  The undersigned first notes that as petitioner's first amended petition was superseded by his second amended petition.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  In other words, petitioner's first amended petition no longer serves any function in this case; therefore, the affidavit of petitioner's wife is not properly before the court.  Even considering the affidavit of petitioner's spouse, the undersigned finds that petitioner has failed to establish a claim of factual innocence.

Federal habeas relief is not available for claims of freestanding factual innocence. See Herrera v. Collins, 506 U.S. 390, 404 (1993) (stating that actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred claim considered on the merits).  Petitioner appears to argue that the evidence adduced at state court was not sufficient to convict.  Accordingly, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

1   See id. at 404.  After a careful review of the record, the undersigned concludes that a rational

2   trier of fact could have found petitioner guilty of the essential elements of the crime based on the

3   evidence produced at trial.

4          **m.**      **Cumulative Effect**

5        Petitioner claims that the combined cumulative effect of the alleged errors in his

6   case establish prejudice.  Where there is no single constitutional error existing, nothing can

7   accumulate to the level of a constitutional violation.  Such is the case here.  Petitioner has failed

8   to demonstrate any constitutional error.  Accordingly, there can be no cumulative effect.

9        For the foregoing reasons, the undersigned finds that none of the theories

10   advanced by petitioner establish that he was prejudiced by prosecutorial misconduct.  The

11   undersigned finds that the state court denial of petitioner's prosecutorial misconduct claim was

12   neither contrary to nor an unreasonable application of controlling principles of federal law.  The

13   undersigned recommends that petitioner's sixth claim for relief be denied.

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

### III.   Conclusion

In accordance with the above, IT IS  RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   December 14, 2005.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

27